Nicole Wooten, PhD                          *        IN THE
408 E North Pointe Dr, Apt #119
Salisbury, Maryland 21804                   *        UNITED STATES DISTRICT

Plaintiff,                                  *        COURT FOR THE

v.                                          *        DISTRICT OF MARYLAND

UNIVERSITY OF MARYLAND, BALTIMORE           *
220 Arch Street, Room 03 111
Baltimore, Maryland 21201                   *

     Serve on:                              *        CASE NO. _____

     Brian E. Frosh, Esq., Attorney General  *
     Office of the Attorney General
     Civil Litigation Division               *
     200 St. Paul Place
     Baltimore, Maryland 21202               *

     and                                     *

     Bruce E. Jarrell, M.D., President       *
     University of Maryland, Baltimore
     220 Arch Street, Room 03 111            *
     Baltimore, Maryland 21201
                                            *
Defendant.
                                            *

   *    *    *    *    *    *    *    *    *    *    *    *

## **COMPLAINT**

    **COMES NOW**, Plaintiff, Nicole Wooten, by and through her attorney, Paul V. Bennett,

Esq., and Bennett Legal Services, Inc, and hereby sues Defendant University of Maryland,

Baltimore (hereinafter "Defendant") and states as follows:

1

## JURISDICTION AND VENUE

1.  This Court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (hereinafter "Title VII").

2.  That all the actions complained of herein from August 5, 2019, to December 31, 2020 took place at Anne Arundel Community College/University of Maryland, Baltimore Collaborative Physician Assistant Program location at Arundel Mills Campus, AMIL 207, 7009 Arundel Mills Circle, Hanover, MD, 21076 (hereinafter referred to as "old campus").

3.  That all the actions complained of herein from January 1, 2021 to April 1, 2022 took place at University of Maryland, Baltimore Physician Assistant Program location at 101 College Pkwy, Arnold, MD 21012 (hereinafter referred to as "Arnold campus").

4.  That at all times relevant hereto, Defendant University of Maryland, Baltimore ("Defendant") is a public institution of higher learning affiliated with the University of Maryland, employing five-hundred (500) or more persons, and is an "employer" within the meaning of Title VII.

5.  On April 2, 2022, Plaintiff timely contacted the Maryland Commission on Civil Rights ("MCCR") alleging discrimination that occurred from August 5, 2019 to April 1, 2022, and submitted her Formal Complaint of Discrimination on May 11, 2022  alleging racial discrimination, harassment, adverse effects on terms and conditions of employment and discipline based on her race (African-American), as well as retaliation for engaging in prior EEO activity with the Defendant's Human Resources Department. MCCR cross filed the charge with the U.S. Equal Employment Opportunity Commission ("EEOC"). On May 22, 2023, the EEOC issued a Notice of Right to Sue.

2

6.       In accordance with Title VII, Plaintiff properly exhausted her administrative remedies before timely filing suit.

## **FACTS COMMON TO ALL COUNTS**

7.       Plaintiff's race is African American.

8.       From August 5, 2019 until April 2, 2022 management subjected Plaintiff to unwarranted discipline, undue criticism in public, harassment with an eye to compel Plaintiff to resign her employment position.

9.       During the relevant time, the Defendant failed to act to address Plaintiff's concerns, and the hostility she experienced and complained about was unabated.

10.      At all times relevant herein, Plaintiff met and/or exceeded Defendant's legitimate job expectations.

11.      From August 5, 2019, until April 1, 2022, Plaintiff worked as an Associate Professor of Physician Assistant Program for the Defendant's Graduate school. Her duties encompassed course development during the didactic year: lectures, syllabi, and objectives, assessing students' work, student's advising sessions, small group learning, weekly labs, creating patient case scenarios, assisting the Clinical Coordinator with securing clinical sites and visits for students transitioning into the clinical year, training the standardized patients, and Telemedicine education. From the onset of Covid-pandemic Plaintiff routinely utilized Zoom as a virtual platform for lectures and meetings.

12.      At the time of the events complained of herein, Plaintiff earned $105,000.00 in salary annually.

13.     At all relevant times mentioned herein, Cherilyn Hendrix (hereinafter "Ms. Hendrix"), Caucasian, Assistant Dean for Physician Assistant Education and Associate Professor, employed by Defendant served as Plaintiff's supervisor.

14.     Upon hire, Plaintiff was subjected to unreasonable work expectations by her supervisor, Ms. Hendrix and Theresa Neumann ("Ms. Neumann"), Caucasian, Assistant Program Director.

15.     In the fall of 2019, Plaintiff was not given any direction and/or feedback on her teaching while simultaneously she was deprived of the opportunity to participate in the New Faculty workshop. This pivotal workshop introduces participants to key faculty leaders, provides essential advice and tips on professional development, as well as resources available to support teaching, research, and clinical growth. The New Faculty workshop was crucial for Plaintiff success since she did not have any prior experience in education. Plaintiff could not participate in that workshop for 2 years while other Caucasian employees could participate in the New Faculty workshop promptly after beginning of their employment.

16.     In the spring of 2020, Plaintiff was not given adequate time to prepare for clinical medicine lectures, the course material was repeatedly changed, and the syllabus was not reviewed which set her up for failure with respect to student satisfaction reviews and adequate performance. Plaintiff was then assigned new duties that Kerry Birney ("Ms. Birney"), Caucasian co-worker, could not perform specifically upcoming summer class, Foundations of Physician Assistant Practice - PHA 105. On May 20, 2020, Plaintiff was given only one week to prepare the syllabus for that course while she was grading students in Patient Evaluation Lab - PHA 122 and preparing for

4

lectures in her other classes. It typically takes 2-4 hours to prepare for 1 hour of lectures and each lecture lasts 4 hours.

17. On May 26, 2020, the Foundations of Physician Assistant Practice course started. Plaintiff was teaching that course for the first time, and she had to do it remotely for the first time due to the pandemic. On May 29, 2020, Ms. Neumann completely changed the course schedule and directed Plaintiff to redo it. Plaintiff submitted the schedule for review well in advance. Syllabus changes after the course began disorganized the class which could be viewed as chaos by the students. Plaintiff was also forced to work during the weekend.

18. In May 2020, Plaintiff started to develop intense stomach pains and on June 8, 2020, she had to go to the hospital. On July 9, 2020, Plaintiff was diagnosed with gastritis.

19. On June 11, 2020, Ms. Neumann told Plaintiff the Foundations of Physician Assistant Practice course needs revamping even though she did not have such comments when Plaintiff first submitted the syllabus.

20. On July 2, 2020, Ms. Neumann told Plaintiff that she turned in her exam late for the review. Ms. Neumann wanted the exam one week prior, which was unreasonable given all the extra work Plaintiff was doing at the time. Plaintiff was being given unrealistic deadlines which caused her to underperform.

21. On or about October 2, 2020, Ms. Neumann scolded Plaintiff for helping new psychiatric instructor, Coleen Ohm, with the item analysis (i.e. whether the exam question is effective) for her psychiatric examination using "Questionmark" platform. Plaintiff was properly trained, and Ms. Neumann was on vacation while Ms. Ohm needed assistance.

22.     During the fall of 2020, Plaintiff was teaching the Pediatrics course. She was constantly criticized and deprived of the textbook.

23.     On February 15, 2021, after Plaintiff reached out to Ms. Neumann to discuss an exam, she was criticized during the lecture allegedly because students reached out to Ms. Neumann regarding their scores on the exam. Ms. Neumann scolded Plaintiff for not doing the task, namely creating the schedule and zoom link announcement, even though it was never assigned to Plaintiff.

24.     In the spring of 2021, Plaintiff was passed up again for the New Faculty workshop. Before becoming Assistant Professor, Plaintiff had 9 years of clinical experience as Physician Assistant but was new to academia. Thus, information such as how to make syllabus, create the objectives, make questions, and how to engage students was crucial for Plaintiff's successful performance. All this information was encompassed by the New Faculty workshop.

25.     On May 18, 2021, Ms. Neumann was promoted to Assistant Program Director.

26.     On May 18, 2021, Ms. Hendrix refused to provide assistance with Service-learning project ideas for Plaintiff's class.

27.     During the summer of 2021, Ms. Ohm received guidance and support from Ms. Neumann that was never offered to Plaintiff. Ms. Neumann timely and carefully reviewed Ms. Ohm's lectures. She even conducted some lectures for Ms. Ohm.

28.     Unlike Caucasian instructors, Plaintiff did not receive any meaningful guidance with regard to the Foundations of Physician Assistant Practice course during the summer of 2021. Only generic comments were given such as "fill the time with documentation or

case scenarios" even though Ms. Neumann knew Plaintiff had no previous experience in education.

29.    On July 25, 2021, Plaintiff was asked by Ms. Hendrix to work on her day off. Shortly after that, Ms. Hendrix told Plaintiff she needs to start working five days including Mondays, which had been Plaintiff's days off due to her need to arrange childcare. Plaintiff's complaints regarding working on her days off made to HR were ignored.

30.    During the summer of 2021, as a direct result of Plaintiff's complaints about lack of support and disparate treatment, Ms. Hendrix and Ms. Neumann started retaliating against Plaintiff, who became fearful of losing her job.

31.    On or about July 27, 2021, as a result of direct retaliation, Ms. Neumann reprimanded Plaintiff for taking a day off to attend the funeral of a relative.

32.    In August 2021, another act of retaliation took place. Plaintiff was accused of being disorganized and her lectures were cut back from 4 to 3 hours. She was thereafter not allowed to quiz students. Ms. Neuman refused to discuss topics and timing for the lectures, unlike how she had done in the past.

33.    On or about August 25, 2021, Plaintiff complained to Ms. Ohm, academic coordinator, about Ms. Neumann changing guidelines on labs last minute, two days before school start. Plaintiff complained that she did not take vacation to prepare early for the new school year. Plaintiff also complained Ms. Neumann was sabotaging Plaintiff's work by last minutes changes. She repeatedly called her a slacker.

34.    During the May 25-26, 2021, Global Summit for the University of Maryland System, students made public racial comments including racial slurs about Plaintiff which went largely unpunished.

35.    On August 27, 2021, Plaintiff met with Ms. Hendrix and Ms. Neuman about Plaintiff's performance and complaints of bullying and scolding against Ms. Neumann, particularly regarding labs. During the meeting Ms. Hendrix simply denied changes were made to the syllabus. Plaintiff then was bullied, attacked, scolded, and accused of insubordination. Mr. Hendrix told Plaintiff "she wanted to wash her hands of her" and referred Plaintiff to mediation. After the meeting, both Ms. Hendrix and Ms. Neuman stopped talking to Plaintiff.

36.    During the August 27, 2021 meeting, Ms. Hendrix referred Plaintiff to mediation because she was unable to resolve issues between Plaintiff and Ms. Neumann. Plaintiff agreed and went to mediation that same day, requesting that both Ms. Hendrix and Ms. Neuman attend. but they both declined.

37.    On October 6, 2021, Plaintiff met with Ms. Hendrix and Ms. Kimberly Bissell, Medical Director, to discuss Plaintiff's performance. During the entire time under the contract, Plaintiff had never received any formal evaluation, but was constantly criticized for students' bad comments about her. Plaintiff complained that not once had any faculty member observed and/or evaluated her in the classroom setting, as required specifically during Clinical Medicine course. In stark contrast to Caucasian co-workers, there were no alternative options given to Plaintiff such as switching from the Didactic Year to the Clinical Year as had been offered to Ms. Birney.

38.    On October 7, 2021, Ms. Neuman gave Plaintiff a last-minute assignment for 3 hours of lecture and did so without adequate time for Plaintiff to prepare.

39.    On October 15, 2021, Ms. Neuman accused Plaintiff of assigning duties to a co-worker. Plaintiff, as lab coordinator, had simply informed Teresa Rogers that she did not have

to do Ms. Lee's labs anymore. Plaintiff just informed others in the team of Ms. Lee's transition via email.

40. Later that day, Plaintiff met with Ms. Hendrix and Ms. Kimberly Bissell concerning her email about Ms. Lee's labs to Ms. Rogers, but instead Plaintiff was criticized for alleged performance deficiencies in her role as a professor.

41. On October 25, 2021, upon her own request, Plaintiff met with Ms. Hendrix, and Dr Flavius Lilly ("Dr. Lilly") Caucasian, Senior Associate Dean. Plaintiff complained about discrimination, harassment, and abuse of power by Ms. Neuman, and the fact the University was not adhering to Justice, Equity, Diversity, and Inclusion initiative to promote a culture of inclusive, educational excellence. As an African American employee, Plaintiff felt unwelcomed, unsupported, and unappreciated. From the fall of 2020, Plaintiff was raising her concerns to Shani Fleming, the chair of Justice, Equity, Diversity, and Inclusion initiative.

42. On October 28, 2021, discussion of Plaintiff's Clinical Correlation class was omitted from the minutes of the curriculum meeting which is supposed to discuss each course and any potential problems. Since this course was new to the program it was important to have a proper review and discussion. Discussion of non-African American coworkers were included in the minutes.

43. In the last week of November of 2021, Plaintiff met with Ms. Hendrix and Dr. Lilly regarding performance and ways to become a better professor. Plaintiff provided her impressions of the students reviews and complained about being discriminated against and harassed by Ms. Neumann. Both Ms. Hendrix and Dr. Lilly kept telling Plaintiff that they did not understand where Plaintiff was coming from. Plaintiff responded, "is

it that they don't understand, or they don't want to understand." At that time, Ms. Hendrix and Dr. Lilly accused Plaintiff of insubordination.

44.   On March 29, 2022, Ms. Hendrix got upset when Plaintiff asked for more time to prepare for standardized patient (SP) encounters, which are used in a medical school to mimic clinical practice by exposing students to possible clinical situations they may encounter in future practice. Plaintiff was assigned an additional 13 cases which would take an additional 6.5 hours in two days on top of her grading and lecturing work.

45.   On April 1, 2022, Plaintiff was told by Ms. Hendrix and Jessica Grabowski, HR specialist, that her contract is not being renewed based on performance.

46.   On April 2, 2022, Plaintiff gave back all office equipment and tuned in badges completing her last day at work.

47.   Caucasian Associate Professors, specifically Colleen Ohm, and Teresa Rogers were not subjected to the same or similar adverse employment actions that Plaintiff endured, including, but not limited to, being reassigned class schedules, receiving unwarranted discipline and public criticism, and also being retaliated against. They also received assistance, guidance and feedback on their work. They were prioritized with respect to training such as New Faculty workshop. They were not forced to work on their days off.

48.   Unlike Plaintiff, Ms. Birney, a Caucasian co-worker, was given multiple opportunities to improve. When Ms. Birney was struggling in the classroom she was switched from the Didactic Year to the Clinical Year.[1] Plaintiff was not offered to switch to clinical

---

[1] The didactic year consists of a series of courses taught using an organ system approach (cardiology, pulmonary, etc.), with pediatrics, infectious disease, emergency medicine, geriatrics and genetics included across each system. After didactic year is complete, clinical year begins. This is the year to gain in-person hands-on experience under assigned preceptors.

year even though she previously spent 9 years in clinical medicine. Plaintiff was not given any other opportunities to work in other areas of the program.

49. When the Defendant did not renew Ms. Birney's contract, she still had access to her emails for several months after her contract ended. Plaintiff's email/University benefits access was shut down 1 hour after she was told her contract will not be renewed, which was 3 months before the contract ended.  This prevented Plaintiff from advancing her career. Plaintiff was working on a publication for an infectious disease book. Once Defendant took her access away, she no longer had access to the library to do her research and write the paper.  Publications are used to advance academic career and are needed to move up in rank.

**COUNT I**
**RACIAL DISCRIMINATION**
**(Disparate Treatment – Race)**
**Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e, *et seq.***

50. Plaintiff hereby restates and incorporates paragraphs 1 through 49 of this Complaint as though fully set forth herein.

51. Plaintiff is a member of a protected class related to her race (African American), at the time of the subject discriminatory acts.

52. Plaintiff was qualified and satisfactorily performing her duties as an Associate Professor with the Defendant.

53. That Defendant carried out the aforementioned acts of discrimination against Plaintiff on the basis of her race- a protected class under Title VII.

54. That the aforementioned acts constitute unlawful practices pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*.

55.    That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of her race (African American).

56.    That similarly situated Caucasian Associate Professors, specifically Colleen Ohm, and Teresa Rogers, outside the protected class were not subjected to the same or similar adverse employment actions that Plaintiff endured, including, but not limited to, being reassigned class schedules, receiving unwarranted discipline and public criticism, and being retaliated against.

57.    That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer loss of earning capacity, severe emotional distress, diminished professional reputation, humiliation, mental anguish, and attorney's fees and litigation costs.

58.    That the intentional discriminatory actions of Defendant, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

59.    As a direct and proximate result of the Defendant's discriminatory actions, Plaintiff has suffered lost wages and benefits, emotional distress, and incurred attorney's fees and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

### COUNT II
### RETALIATION
### (Adverse Actions and Disparate Treatment)
### Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e, *et seq.*

60.    Plaintiff hereby restates and incorporates paragraphs 1 through 49 of this Complaint as though fully set forth herein.

61. From fall of 2020, Plaintiff was raising her concerns about disparate treatment including with respect to training, guidance and feedback to Shani Fleming, the chair of Justice, Equity, Diversity, and Inclusion (JEDI) initiative. Plaintiff complained that Caucasian employees were getting preferential treatment.

62. On or about July 25, 2021, Plaintiff complained to Human Resources about Ms. Hendrix directing her to work on her days off. Plaintiff opposed the fact that no other Caucasian co-worker was subjected to the same treatment.

63. On or about August 25, 2021, Plaintiff complained to Ms. Ohm, academic coordinator, about Ms. Neumann making inappropriate comments and changing guidelines on labs two days before school start thus sabotaging Plaintiff's work by last minutes changes. She complained no other Caucasian co-worker was subjected to the same treatment.

64. On August 27, 2021, Plaintiff complained to Ms. Hendrix and Ms. Neuman about Ms. Neumann bullying and scolding Plaintiff, particularly regarding labs. Plaintiff complained that no other Caucasian co-worker, particularly Colleen Ohm, and Teresa Rogers, was subjected to the same treatment.

65. On or about October 6, 2021, Plaintiff complained to Ms. Hendrix and Ms. Kimberly Bissell, Medical Director, that during the entire time under the contract, Plaintiff had never received any formal evaluation, but was constantly criticized for students' bad comments about her. Moreover, Plaintiff complained that not once had any faculty member observed and/or evaluated her in the classroom setting, as required specifically during Clinical Medicine course.

66. On October 25, 2021, and during the last week of November of 2021, Plaintiff complained to Ms. Hendrix, and Dr Lilly, Senior Associate Dean about

discrimination, harassment, and abuse of power by Ms. Neuman. As an African American employee, Plaintiff felt unwelcomed, unsupported, and unappreciated.

67.     The aforementioned complaints with the JEDI and management constitute "legally protected activities" under Title VII.

68.     The subsequent adverse employment actions, as set forth in the above-referenced facts common to all counts, such as, but not limited to, reprimanding Plaintiff for attending the funeral of the relative, accusing her of alleged disorganization and lower performance, cutting back her lectures, and non-renewal of the contract, amounted to illegal retaliation. As Defendant's actions were motivated to punish Plaintiff for engaging in legally protected activities and were intended to dissuade others from engaging in similarly legally protected activities. Indeed, the net effect of failing to renew Plaintiff's employment contract was to likely dissuade others from engaging in legally protected activities.

69.      That the aforementioned acts of retaliation for complaining of discrimination constitute unlawful employment practices pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*

70.     The aforementioned legally protected activities were known by upper management to have occurred.

71.     That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee based upon his legally protected activities.

72.     That the intentional retaliatory actions complained of above were done with malice and/or with reckless indifference to Plaintiffs rights.

14

73. As a direct and proximate result of the Defendant's retaliatory actions, Plaintiff has suffered lost wages and benefits, emotional distress, incurred attorney's fees and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## COUNT III
## TITLE 20 OF THE STATE GOVERNMENT ARTICLE
### (Discrimination based on Race)
**Md. Ann. Code., State Gov't, §20-601,** *et. seq.*

74. Plaintiff hereby restates and incorporates paragraphs 1 through 49 of this Complaint as though fully set forth herein.

75. Upon hire, Plaintiff was subjected to unreasonable work expectations by her supervisor, Ms. Hendrix and Ms. Neumann, Assistant Program Director, both Caucasian.

76. In the fall of 2019, Plaintiff was not given any direction, feedback and/or adequate training on her teaching. No other Caucasian Associate Professor, particularly Colleen Ohm, and Teresa Rogers, were deprived of assistance, training guidance and feedback on their work.

77. In the spring of 2020, Plaintiff was not given adequate time to prepare for clinical medicine lectures, the course material was repeatedly changed, and the syllabus was not reviewed which set her up for failure with respect to student satisfaction reviews and adequate performance. No other Caucasian Associate Professor, particularly Colleen Ohm, and Teresa Rogers, had class schedules reassigned, received unwarranted discipline and public criticism.

78. Plaintiff was assigned new duties that Caucasian co-workers, specifically Ms. Birney, could not perform particularly upcoming summer class, Foundations of Physician Assistant Practice - PHA 105.

79.   Unlike Plaintiff, Ms. Birney, a Caucasian co-worker, was given multiple opportunities to improve when she was struggling in the classroom by switching her from the Didactic Year to the Clinical Year.

80.   Defendant has discriminated against Plaintiff in the terms and conditions of her employment on the basis of race in violation of Title 20, §20-606 of the Maryland State Government Article (hereinafter "Title 20").

81.   The above acts and practices of the Defendant constitute unlawful discriminatory employment practices within the meaning of Title 20.

82.   The Defendant's acts were carried out with malice and reckless disregard for Plaintiff's protected civil rights.

83.   As a direct and proximate result of the Defendant's discriminatory actions, Plaintiff has suffered lost wages and emotional distress, and incurred attorneys' fees and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT IV**
**TITLE 20 OF THE STATE GOVERNMENT ARTICLE**
**(Retaliation based on Race)**
**Md. Ann. Code., State Gov't, §20-601, *et. seq.***

84.   Plaintiff hereby restates and incorporates paragraphs 1 through 49 of this Complaint as though fully set forth herein.

85.   Plaintiff engaged in protected activity when she complained about discrimination and harassment based on race.

86.   In retaliation for Plaintiff's complaints, Defendant failed to address Plaintiff's continued requests that Defendant cease, address and correct these discriminatory acts

and practices and Defendant has continued to continue to engage with such acts and practices.

87.     There is a causal connection between Plaintiff's complaints and the materially adverse actions and disparate treatment taken against Plaintiff by Defendant.

88.     The retaliation endured by the Plaintiff would dissuade a reasonable employee from making complaints of discrimination, and harassment.

89.     Defendant retaliated against the Plaintiff for engaging in protected activity in violation of Md. Ann. Code., State Gov't, §20-601, et. seq.

90.     As a direct and proximate result of the Defendant's retaliatory actions, Plaintiff has suffered lost wages and emotional distress, and incurred attorneys' fees and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

### COUNT V
### HOSTILE WORK ENVIRONMENT
### Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e et seq.

91.     Plaintiff hereby restates and incorporates paragraphs 1 through 49 of this Complaint as though fully set forth herein.

92.     That the conduct of Ms. Hendrix and Ms. Neumann constituted unwelcome actions, comments, and behavior that was hostile toward Plaintiff.

93.     The aforementioned actions, comments, and behavior were subjectively offensive to the Plaintiff, which prompted her complaints to management, Ms. Neumann, Ms. Hendrix and Dr Lily, in an effort to alleviate the hostility.

94.     That the effect of the practices complained of above were objectively offensive such that a reasonable person would find that the practices deprived Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of her race (African American).

95.     That the unlawful employment practices complained of above were intentional, unwelcome, and personally hostile and offensive to Plaintiff.

96.     That the aforementioned conduct of Defendant's University of Maryland, Baltimore employees was sufficiently severe and pervasive so as to alter the terms and conditions of Plaintiff's employment and to create an intimidating, hostile and offensive working environment for Plaintiff.

97.     That the discriminatory and retaliatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation and mental anguish.

98.     That the intentional discriminatory and retaliatory actions of Defendant against Plaintiff, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

99.     That Defendant University of Maryland, Baltimore knew or should have known of the aforementioned conduct of its management against Plaintiff and failed to take prompt corrective action.

100.    That Defendant University of Maryland, Baltimore is vicariously liable for the conduct of its employees carried out in the course and scope of their employment.

**PRAYER FOR DAMAGES**

WHEREFORE, for the foregoing reasons, Nicole Wooten, Plaintiff, demands judgment

against University of Maryland, Baltimore, Defendant, as follows:

a.  $300,000.00 as compensatory damages;

b.  Prejudgment and post judgment interest;

c.  Award attorney's fees and costs, including expert witness fees, as allowed by law;

d.  And for such other and further relief as this Honorable Court deems just and equitable.

Respectfully submitted,

_____/s/_____
Paul V. Bennett, Esq. (Bar No. 10324)
Bennett Legal Services, Inc.
5457 Twin Knolls Road, Suite 300
Columbia, Maryland 21045
(410) 353-4994
pbennett@bennettlaw.net

*Attorney for Plaintiff*

**DEMAND FOR JURY TRIAL**

Nicole Wooten, Plaintiff, hereby demands that the matter be tried by jury.

_____/s/_____
Paul V. Bennett, Esq. (Bar No. 10324)