IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NICOLE WOOTEN,

*Plaintiff*,

*v.*

UNIVERSITY OF MARYLAND,
BALTIMORE,

*Defendant*.

Civil Action No. ELH-23-2272

**MEMORANDUM OPINION**

Plaintiff Nicole Wooten was an Assistant Professor in the Physician Assistant Program ("PAP") at the University of Maryland, Baltimore ("University"), from August 5, 2019, until April 1, 2022. Wooten's employment ended when the University declined to renew her teaching contract, citing unsatisfactory job performance. Wooten subsequently filed suit against the University, alleging that her supervisors discriminated against her on the basis of race, subjected her to a hostile work environment, and retaliated against her for the exercise of a protected right. ECF 1 ("Complaint").

In particular, the Complaint contains five counts: discrimination on the basis of race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") (Count I); retaliation, in violation of Title VII (Count II); discrimination on the basis of race, in violation of the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code (2021 Repl. Vol.), § 20-601 *et seq.* of the State Government Article (Count III); retaliation, in violation of MFEPA (Count IV); and hostile work environment, in violation of Title VII (Count V).

Pursuant to Fed. R. Civ. P. 12(b)(6), defendant has filed a motion for "partial dismissal" of the Complaint. ECF 8. Specifically, the University seeks to dismiss Counts II, IV, and V. The motion is supported by a memorandum (ECF 8-1) (collectively, the "Motion") and a single exhibit,

a "Charge of Discrimination" filed by plaintiff with the Maryland Commission on Civil Rights ("MCCR").  *See* ECF 8-2 ("Charge").

Plaintiff opposes the Motion.  ECF 11; ECF 11-1 ("Opposition").  The Opposition is supported by two exhibits: a "Timeline" of plaintiff's interactions with her supervisors, which plaintiff submitted to the Equal Employment Opportunity Commission ("EEOC") (ECF 11-2, the "Timeline"), and a copy of an email exchange from April and May 2022, between plaintiff and Tori Ratchford, an "Investigator Support Assistant" at the EEOC.  ECF 11-3 ("Ratchford exchange").  Neither exhibit is referenced in the Complaint.  Defendant has replied.  ECF 14 (the "Reply").

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion.

## I.      Factual Background[1]

Plaintiff, who is Black, ECF 1, ¶ 7, worked as an Assistant Professor[2] in the PAP from August 5, 2019, until April 1, 2022.  *Id.* ¶¶ 11, 24; ECF 8-2.[3]  She was responsible for "course development during the didactic year," the preparation of "lectures, syllabi, and objectives," the "assess[ment] of students' work, student's [sic] advising sessions, small group learning, weekly

---

[1] As discussed, *infra*, at this juncture I must assume the truth of the factual allegations.

[2] The Complaint refers to plaintiff as both an "Assistant Professor," ECF 1, ¶ 24, and an "Associate Professor."  *See, e.g., id.* ¶ 11.  In the Charge, plaintiff states that she "was an Assistant Professor."  ECF 8-2.  I shall assume that the Charge accurately describes the nature of plaintiff's appointment and that the Complaint's reference to her status as an "Associate Professor" is incorrect.

[3] As discussed, *infra*, I may consider the Charge because it is referenced in, and integral to, the Complaint.

labs, creating patient case scenarios, assisting the Clinical Coordinator[4] with securing clinical sites . . . training the standardized patients,[5] and Telemedicine education." ECF 1, ¶ 11.

When plaintiff began work as an assistant professor in the PAP, she "did not have any prior experience in education." *Id.* ¶ 15.[6] However, she had nine years of "clinical experience" as a Physician Assistant. *Id.* ¶ 24.

During the time that plaintiff was employed by the University, Cherilyn Hendrix was Assistant Dean for Physician Assistant Education and an Associate Professor. *Id.* ¶ 13. Hendrix, who is white, was plaintiff's supervisor. *Id.* Theresa Neumann, who is also white, was Assistant Director of the PAP. *Id.* ¶ 14.

Despite plaintiff's lack of teaching experience, "[i]n the fall of 2019"—the beginning of plaintiff's first academic year as an assistant professor—"Plaintiff was not given any direction and/or feedback on her teaching . . . ." *Id.* ¶ 15. In addition, she was not invited to participate in the "New Faculty workshop," which "introduces participants to key faculty leaders, provides essential advice and tips on professional development, as well as resources available to support teaching, research, and clinical growth." *Id.* Yet, she claims that several white employees participated in the New Faculty workshop "promptly after beginning of their employment [sic]." *Id.*

---

[4] Plaintiff's allegations do not include information about the work performed by the "Clinical Coordinator."

[5] "[S]tandardized patient encounters . . . are used in a medical school to mimic clinical practice by exposing students to possible clinical situations they may encounter in future practice." ECF 1, ¶ 44.

[6] Although the caption of the Complaint identifies plaintiff as "Nicole Wooten, Ph.D.," the Complaint provides no information about plaintiff's education history.

Plaintiff first "rais[ed] her concerns about disparate treatment[,] including with respect to training, guidance, and feedback," in the "fall of 2020." *Id.* ¶ 61. In particular, she "complained" to "Shani Fleming, the chair of Justice, Equity, Diversity, and Inclusion . . . that Caucasian employees were getting preferential treatment." *Id.*

"In the spring of 2020, Plaintiff was not given adequate time to prepare for clinical medicine lectures, the course material was repeatedly changed, and the syllabus was not reviewed . . . ." *Id.* ¶ 16.[7] Moreover, plaintiff "was . . . assigned new duties," namely, to replace Kerry Birney, a white coworker, as the instructor of a "summer class" called "Foundations of Physician Assistant Practice." *Id.* After learning of this new assignment, plaintiff had only one week to prepare a syllabus. *Id.* But, during that week, plaintiff was also responsible for grading the work of students in another class, titled "Patient Evaluation Lab," and for "preparing for lectures in her other classes." *Id.*

Plaintiff began teaching "Foundations of Physician Assistant Practice" on May 26, 2020. *Id.* ¶ 17. Although plaintiff had "submitted the [course] schedule for review well in advance," Neumann "completely changed the course schedule and," on May 29, 2020, "directed Plaintiff to redo it." *Id.* These changes "disorganized the class" and created a perception among the students that plaintiff's teaching was "chaos." *Id.* The changes also forced plaintiff to work during the weekend. *Id.* On June 11, 2020, Neumann again instructed plaintiff to make changes to the "Foundations of Physician Assistant Practice" syllabus. *Id.* ¶ 19. Neumann did so even though

---

[7] Plaintiff does not identify the person or persons who did not give her adequate time to prepare, repeatedly changed the course material, and failed to review her syllabus. Nor does plaintiff identify the course in relation to which she prepared "the syllabus [that] was not reviewed." ECF 1, ¶ 16.

she "did not have such comments when Plaintiff first submitted the syllabus." *Id.* Neumann also criticized plaintiff for "turn[ing] in her exam late for review." *Id.* ¶ 20.

In May 2020, plaintiff began to develop "intense stomach pains." *Id.* ¶ 18. On June 8, 2020, she went to the hospital for treatment of her stomach pain on June 8, 2020. *Id.* And, on July 9, 2020, she was diagnosed with gastritis. *Id.*

On October 2, 2020, "Neumann scolded Plaintiff for helping new psychiatric instructor . . . Coleen Ohm" assess "whether [an] exam question [was] effective . . . using [the] 'Questionmark' platform." *Id.* ¶ 21. Yet, plaintiff had been "properly trained" in the use of Questionmark. *Id.* Moreover, Neumann herself was on vacation when Ohm needed help. *Id.*

Plaintiff taught a course in pediatrics in the fall of 2020. *Id.* ¶ 22. "She was constantly criticized and deprived of the textbook." *Id.*

In February of 2021, Neumann "criticized [plaintiff] during [a] lecture" for not "creating [a] schedule and [Z]oom link announcement." *Id.* ¶ 23. However, this task "was never assigned to Plaintiff." *Id.*

In the spring of 2021, plaintiff was, for a second time, not invited to the New Faculty workshop. *Id.* ¶ 24. Thus, she was again deprived of an opportunity to learn "how to make [a] syllabus, create the objectives, make questions, and how to engage students . . . ." *Id.*

Neumann was promoted to "Assistant Program Director" on May 18, 2021. *Id.* ¶ 25. Also on that date, Hendrix "refused to provide [plaintiff with] assistance with Service-learning project ideas for Plaintiff's class." *Id.* ¶ 26.

On May 25 and May 26, 2021, plaintiff attended a "Global Summit for the University of Maryland System." *Id.* ¶ 34. She claims that, at the event, "students made public racial comments

including racial slurs about Plaintiff." *Id.*  These comments and slurs "went largely unpunished." *Id.*

Plaintiff again taught the Foundations of Physician Assistant course in the summer of 2021. *See id.* ¶ 28.  However, she "did not receive any meaningful guidance" regarding her teaching of the course.  *Id.*  Instead, she received "generic comments . . . such as 'fill the time with documentation or case scenarios . . . .'"  *Id.*  Neumann failed to help plaintiff "even though . . . Neumann knew Plaintiff had no previous experience in education."  *Id.*  In contrast, "Ohm received guidance and support from . . . Neumann that was never offered to Plaintiff."  *Id.* ¶ 27.  In particular, "Neumann timely and carefully reviewed . . . Ohm's lectures" and "even conducted some lectures" on Ohm's behalf.  *Id.*

On July 25, 2021, Hendrix asked plaintiff to work on her day off.  *Id.* ¶ 29.  Shortly thereafter, Hendrix told plaintiff that plaintiff needed to work five days per week, including on Monday.  *Id.*  However, plaintiff generally did not work on Mondays, so that she could "arrange childcare."  *Id.*  "Plaintiff complained to Human Resources about . . . Hendrix directing her to work on her days off."  *Id.* ¶ 62.  But, plaintiff's complaints "were ignored."  *Id.* ¶ 29.

According to plaintiff, Hendrix and Neumann began retaliating against her during the summer of 2021, "as a direct result of Plaintiff's complaints about lack of support and disparate treatment . . . ."  *Id.* ¶ 30.  In particular, on July 27, 2021, in an act of "direct retaliation . . . Neumann reprimanded Plaintiff for taking a day off to attend the funeral of a relative."  *Id.* ¶ 31.  In August 2021, in "another act of retaliation," plaintiff "was accused of being disorganized and her lectures were cut back from 4 to 3 hours."  *Id.* ¶ 32.  Plaintiff was also instructed that she should not administer quizzes to students.  *Id.*  In addition, Neumann "refused to discuss topics and timing

for the lectures," even though "she had done [so] in the past." *Id.* As a result of this retaliation, plaintiff became fearful of losing her job. *Id.* ¶ 30.

Plaintiff met with Hendrix and Neumann on August 27, 2021, to discuss plaintiff's performance and her complaints that Neumann had bullied her. *Id.* ¶ 35. During the meeting, Hendrix "denied changes were made to the syllabus." *Id.*[8] "Plaintiff then was bullied, attacked, scolded, and accused of insubordination." *Id.* Hendrix told plaintiff that she wanted to "wash her hands of" plaintiff and referred plaintiff to mediation. *Id.* "After the meeting, both . . . Hendrix and . . . Neuman[n] stopped talking to Plaintiff." *Id.*

Plaintiff attended a mediation "that same day," *i.e.* August 27, 2021. *Id.* ¶ 36. Although plaintiff asked that Hendrix and Neumann also attend the mediation, "both declined." *Id.*

On October 6, 2021, plaintiff met with Hendrix and Kimberly Bissell, a "Medical Director," to discuss plaintiff's job performance. *Id.* ¶ 37. Plaintiff "had never received any formal evaluation." *Id.* Nor had she been observed or evaluated "in the classroom setting" by a faculty member. *Id.* Nonetheless, plaintiff "was constantly criticized for students' bad comments about her." *Id.* Moreover, unlike her white coworkers with poor teaching performance, plaintiff was not offered the alternative of working in a clinical setting. *Id.*; *see id.* ¶ 48.

The next day, on October 7, 2021, Neumann "gave Plaintiff a last-minute assignment for 3 hours of lecture and did so without adequate time for Plaintiff to prepare." *Id.* ¶ 38. And, on October 15, 2021, Neumann "accused Plaintiff of assigning duties to a co-worker." *Id.* ¶ 39.[9]

---

[8] Plaintiff's allegation that Hendrix "denied changes were made to the syllabus" is left unexplained. ECF 1, ¶ 35.

[9] Plaintiff does not explain how these alleged interactions with Neumann are consistent with her assertion that, after the meeting of August 27, 2021, Neumann "stopped talking to" plaintiff. ECF 1, ¶ 35.

Plaintiff met with Hendrix and Flavius Lilly, the "Senior Associate Dean," on October 25, 2021. *Id.* ¶ 41. At the meeting, which plaintiff requested, plaintiff "complained about discrimination, harassment, and abuse of power by" Neumann. *Id.* Plaintiff also complained that "the University was not adhering to Justice, Equity, Diversity, and Inclusion initiative[s] . . . ." *Id.* Plaintiff stated that, "[a]s an African American employee," she "felt unwelcomed, unsupported, and unappreciated." *Id.*

A "curriculum meeting" was held on October 28, 2021. *Id.* ¶ 42. The purpose of a curriculum meeting is "to discuss each course and any potential problems." *Id.* Because plaintiff's "Clinical Correlation" course "was new to the program it was important to have a proper review and discussion." *Id.* Nonetheless, at the meeting, "discussion of Plaintiff's Clinical Correlation class was omitted from the [meeting] minutes . . . ." *Id.* However, the minutes included discussion of courses taught by "non-African American coworkers." *Id.*

In the last week of November of 2021, plaintiff met again with Hendrix and Lilly to discuss her job "performance and ways to become a better professor." *Id.* ¶ 43. At the meeting, "Plaintiff provided her impressions of the students['] reviews and complained about being discriminated against and harassed by . . . Neumann." *Id.* However, Hendrix and Lilly "kept telling Plaintiff that they did not understand where Plaintiff was coming from." *Id.* They also "accused Plaintiff of insubordination" after plaintiff asked: "'[I]s it that they don't understand, or they don't want to understand.'" *Id.*

In March 2022, plaintiff was assigned to prepare "an additional 13 cases" of "standardized patient encounters." *Id.* ¶ 44. Standardized patient encounters "are used in a medical school to mimic clinical practice by exposing students to possible clinical situations they may encounter in future practice." *Id.* Preparing for the "additional 13 cases would take . . . 6.5 hours in two days"

8

in addition to "her grading and lecturing work." *Id.* On March 29, 2022, plaintiff asked Hendrix "for more time to prepare . . . ." *Id.* Upon receiving plaintiff's request for more time, "Hendrix got upset." *Id.*

Two days later, on April 1, 2022, Hendrix and Jessica Grabowski, a human resources employee, informed plaintiff that the University would not renew her employment contract. *Id.* ¶ 45.[10] Plaintiff was told that the University's decision was "based on performance." *Id.* Plaintiff's last day of work was April 2, 2022. *Id.*

According to plaintiff, white professors—in particular, Ohm and Teresa Rogers—"were not subjected to the . . . adverse employment actions that Plaintiff endured." *Id.* ¶ 47. In particular, they were not "reassigned class schedules," did not receive "unwarranted discipline and public criticism," and were not "retaliated against." *Id.* They also "received assistance, guidance and feedback on their work, . . . were prioritized with respect to training such as [the] New Faculty workshop," and "were not forced to work on their days off." *Id.*

Moreover, unlike plaintiff, a white coworker, Birney, "was given multiple opportunities to improve." *Id.* ¶ 48. "When . . . Birney was struggling in the classroom[,] she was switched" to work in a clinical setting. *Id.* In contrast, plaintiff "was not offered to switch to clinical year [sic] even though she previously spent 9 years in clinical medicine." *Id.* Nor was plaintiff "given any other opportunities to work in other areas of the program." *Id.* And, although the University declined to renew Birney's contract, Birney was allowed to "access to her emails for several months after her contract ended." *Id.* ¶ 49. In contrast, the University terminated plaintiff's access to her email and other University benefits one hour after plaintiff learned that her contract would

---

[10] The Complaint provides no information about plaintiff's employment contract, except that it was not renewed.

not be renewed. *Id.* As a result, plaintiff, who "was working on a publication for an infectious disease book[,] . . . no longer had access to the library to do her research and write the paper." *Id.*

On May 11, 2022, plaintiff filed the Charge with the MCCR. ECF 8-2. The MCCR then "cross[-]filed" the Charge with the EEOC. ECF 1, ¶ 5.

The Charge alleged that, between August 5, 2019, and April 1, 2022, the University discriminated against plaintiff on the basis of race. *Id.* Plaintiff provided the following information, *id.*:

> I. I was employed by the above named Respondent since August 5, 2019; I was an Assistant Professor. Upon hire, I was subjected to stricter work conditions with less support by supervisor Cherliyn Hendrix and Assistant Program Director Theresa Neumann, compared to white employees. During this time, I was also subjected to constant criticism on my work performance by Neumann. Throughout my employment, I reported to Respondent about this treatment but received no assistance. On April 1, 2022, I was discharged. II. Respondent explained that I was terminated for poor work performance. No explanation was provided for the other treatment to which I was subjected. III. I believe I was discriminated against due to my race (black) with regards to terms and conditions, harassment and discharge, in violation of Title VII of the Civil Rights Act of 1964, as amended.

On May 22, 2023, the EEOC issued plaintiff a Notice of Right to Sue. *Id.*

## II.    Standard of Review

### A.  Rule 12(b)(6) in General

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Nadendla v. WakeMed*, 24 F.4th 299, 304–05 (4th Cir. 2022); *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221

(2013).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325–26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570*; see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); *see also Fauconier v. Clarke*, 966 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire*, 918 F.3d at 317–18; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

A plaintiff need not include "detailed factual allegations" to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678.  Moreover, federal pleading rules "do not countenance

dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam). Nor must a plaintiff "'forecast' evidence sufficient to prove a claim." *Harbourt v. PPE Casino Resorts Md., LLC*, 820 F.3d 655, 658 (4th Cir. 2016) (citation omitted). However, "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Giacomelli*, 588 F.3d at 193 (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Instead, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable, and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cnty.*, 628 F.3d 140, 146 (4th Cir. 2010).

"A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the relief sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012). But, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion. *Morrow v. Navy Federal Credit Union*, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022).

When ruling on a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brio Sys.*, LLC, 959 F.3d 605, 616 (4th Cir. 2020). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*' " *Goodman*, 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst*, 4 F.3d at 250); *see L.N.P. v. Kijakazi*, 64 F.4th 577, 585–86 (4th Cir. 2023).

It is well settled that a plaintiff may not cure a defect in a complaint or otherwise amend a complaint by way of opposition briefing. *See, e.g., De Simone v. VSL Pharmaceuticals*, 36 F.4th 518, 531 (4th Cir. 2022) (recognizing that, generally, new arguments cannot be raised in a reply brief); *Henderson v. City of Roanoke*, 2022 WL 704351, at *3 (4th Cir. Mar. 9, 2022) (per curiam)

("[N]o litigant is exempt from the well-established rule 'that parties cannot amend their complaints through briefing or oral advocacy.'") (quoting *So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013)); *Glenn v. Wells Fargo Bank, N.A.*, DKC-15-3058, 2016 WL 3570274, at *3 (D. Md. July 1, 2016) (declining to consider declaration attached to brief opposing motion to dismiss because, among other things, it included allegations not included in the suit); *Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). *See Goines*, 822 F.3d at 166 (a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits"); *see also Pendleton v. Jividen*, 96 F.4th 652, 656 (4th Cir. 2024); *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). In contrast, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

14

Under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied sub nom. City of Greensboro v. BNT Ad Agency, LLC*, 583 U.S. 1044 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012).

To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (emphasis in original) (citation omitted); *see also Brentzel v. Fairfax Transfer and Storage, Inc.,* 2021 WL 6138286, at *2 (4th Cir. Dec. 29, 2021) (per curiam); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). For example, "'courts have found integral [to a complaint] the allegedly fraudulent document in a fraud action, the allegedly libelous magazine article in a libel action, and the documents that constitute the core of the parties' contractual relationship in a breach of contract dispute.'" *Chesapeake Bay Found., Inc.*, 794 F. Supp. 2d at 611 n.4 (quoting *Fisher v. Maryland Dep't of Pub. Safety and Corr. Servs.*, JFM-10-206, 2010 WL 2732334, at *2 (D. Md. Jul. 8, 2010)).

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'"

*Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

As noted, defendant appended to the Motion a copy of the Charge that plaintiff filed with the MCCR/EEOC.  *See* ECF 8-2.  Notably, "[i]n employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions."  *Campbell v. Mayorkas*, MOC-20-697, 2021 WL 2210895, at *1 n.3 (W.D.N.C. June 1, 2021) (citing *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018)); *see Jacques v. Balt. City Police Dep't*, SAG-21-02682, 2022 WL 1061980, at *3 (D. Md. Apr. 8, 2022); *Stennis v. Bowie State Univ.*, 236 F. Supp. 3d 903, 907 n.1 (D. Md. 2017), *aff'd in part*, *vacated in part on other grounds*, 716 F. App'x 164 (4th Cir. 2017).

In the usual course, the "exhibit-prevails rule" applies; it "provides that 'in the event of [a] conflict between the bare allegations of the complaint and any exhibit attached . . . the exhibit prevails.'"  *Goines*, 822 F.3d at 166 (citing *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).  But, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it."  *Goines*, 822 F.3d at 167.  Therefore, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true."  *Id.*

16

**B. Rule 12(b)(6) in the Context of Employment Discrimination**

In *Swierkiewicz*, 534 U.S. at 510, the Supreme Court explained that the prima facie case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973), "is an evidentiary standard, not a pleading requirement." Moreover, the Court stated that it had "never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Swierkiewicz*, 534 U.S. at 511. Therefore, the Court held that, to survive a motion to dismiss, "an employment discrimination plaintiff need not plead a prima facie case of discrimination." *Id*. at 515; *see also Laurent-Workman v. Wormuth,* 54 F.4th 201, 210 (4th Cir. 2022); *Bing*, 959 F.3d at 616; *McCleary-Evans v. Maryland Dep't of Transp.*, 780 F.3d 582, 584 (4th Cir. 2015).

As the Second Circuit observed, the Supreme Court's holding in *Swierkiewicz* is arguably in tension with the Court's subsequent rulings in *Iqbal*, 556 U.S. 662, and *Twombly*, 550 U.S. 544. *See Littlejohn v. Cnty. of New York*, 795 F.3d 297, 307 (2d Cir. 2015). On the one hand, "*Swierkiewicz* on its face . . . appears to have meant that a Title VII plaintiff is not required to plead facts supporting even a minimal inference of discriminatory intent." *Id*. at 309. On the other hand, in *Twombly* the Court said that a plaintiff must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. And, in *Iqbal*, the Court specified that the heightened pleading standard of *Twombly* is applicable in "'all civil actions' . . . ." *Iqbal*, 556 U.S. at 684.

In *Woods*, 855 F.3d at 648, the Fourth Circuit clarified that, although a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss," the "pleading standard established in *Iqbal* and *Twombly* applies[.]" In other words, a plaintiff asserting employment discrimination in violation of Title VII—like every plaintiff asserting a violation of a statute—is "required to allege facts [that] satisfy the elements of

a cause of action created by that statute." *McCleary-Evans*, 780 F.3d at 585.  Therefore, in a suit alleging race or sex discrimination in violation of Title VII, a plaintiff must allege that the employer "'fail[ed] or refus[ed] to hire' her '*because of* [her] race . . . [or] sex.'"  *Id.* (quoting 42 U.S.C. § 2000e-2(a)(1)) (alterations and emphasis in *McCleary-Evans*); *see Felder v. MGM National Harbor, LLC*, 2022 WL 2871905, at \*1 (4th Cir. July 21, 2022) (per curiam).

Although a plaintiff need not plead a prima facie case of discrimination to state a claim, reference to the prima facie case may nonetheless inform a court's evaluation of a motion to dismiss.  *See Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003); *Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 314 (2015).  As one judge in the Northern District of California has explained, "courts still look to the elements of the prima facie case to decide, in light of judicial experience and common sense, whether the challenged complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1300–01 (N.D. Cal. 2020) (citation and internal quotation marks omitted).

### III.    Discussion

As noted, defendant has moved to dismiss Count II of the Complaint, which alleges retaliation, in violation of Title VII; Count IV, which alleges race discrimination, in violation of MFEPA; and Count V, which alleges a hostile work environment, in violation of Title VII.  ECF 8; ECF 8-1.  Plaintiff opposes the Motion.  ECF 11; ECF 11-1.  Both parties have filed exhibits in support of their respective submissions.  *See* ECF 8-2; ECF 11-2; ECF 11-3.

### A.

As an exhibit to the Motion, defendant has submitted a copy of the Charge filed by plaintiff with the Maryland Commission on Civil Rights.  *See* ECF 8-2.  And, as exhibits to the Opposition,

plaintiff has filed a Timeline of her interactions with employees of the University (ECF 11-2) and an email exchange in April and May 2022, between plaintiff and Tori Ratchford, an EEOC representative.  ECF 11-3.  I first address the extent to which I may consider the parties' exhibits in connection with my assessment of whether Counts II, IV, and V state a claim.

The "very existence" of the Charge "gives rise to" the "legal right[] asserted," *Chesapeake Bay Found., Inc.*, 794 F. Supp. 2d at 611 (citation and internal quotation marks omitted), insofar as the Charge establishes—or fails to establish—that "'plaintiff has standing to file suit under Title VII.'"  *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 383–84 (4th Cir. 2022) (quoting *Bryant v. Bell Atlantic, Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002)).  Moreover, plaintiff referenced the Charge in her Complaint, ECF 1, ¶ 5, and does not dispute its authenticity.  *See Webb v. Potomac Elec. Power Co.,* TDC-18-3303, 2020 WL 1083402, at *2 (D. Md. Mar. 6, 2020) ("[T]he Court will consider Webb's EEOC Charge, submitted with the Motion, as a document integral to the Amended Complaint because Webb referenced the Charge in the Amended Complaint and he has not objected to its authenticity."); *Evans v. Md. State Hwy. Admin.,* JKB-18-935, 2018 WL 4733159, at *1 n.1 (D. Md. Oct. 2, 2018) (same)*; White v. Mortg. Dynamics, Inc.,* 528 F. Supp. 2d 576, 579 (D. Md. 2007) (same)*.*

Under the circumstances attendant here, I may consider the Charge because it is integral to the Complaint.  Moreover, as discussed earlier, courts often take judicial notice of EEOC charges and decisions.  *See*, *e.g.*, *Jacques*, 2022 WL 1061980, at *3; *Campbell*, 2021 WL 2210895, at *1 n.3; *Golden*, 319 F. Supp. 3d at 366 n.2.

Plaintiff submitted the Timeline (ECF 11-2) to the EEOC on April 11, 2022, *id.* at 1, one month before she filed the Charge.  *See* ECF 8-2.  The Timeline is a detailed, nineteen-page narrative of plaintiff's interactions with her supervisors during her employment at the University.

*See* ECF 11-2.  On a single page of the Timeline, plaintiff "mention[s] retaliation."  ECF 11-1 at 9.  In particular, she states:  "This is retaliation for me going [sic] to Dean [sic] of the Institution about their unfair treatment towards me."  ECF 11-2 at 19.[11]

The Ratchford email exchange (ECF 11-3) consists of an email sent by Ratchford to plaintiff on April 13, 2022, and an email sent by plaintiff to Ratchford on May 11, 2022.  In Ratchford's email of April 13, 2022, she stated, *id.*:  "Good morning Ms. Wooten, Apologies for missing your call yesterday.  This email is to confirm that I received your timeline."[12]

On May 11, 2022, the same day on which plaintiff filed the Charge, *see* ECF 8-2, plaintiff wrote to Ratchford by email, stating, ECF 11-3 (emphasis added):

> Hi Ms. Ratchford,
>
> I signed my EEOC complaint.  Will the timeline I provided be a part of the complaint?  I didn't have enough room on the website to include all that information.  Also, *the timeline explains . . . that in addition to the racial discrimination that* [sic] *there was retaliation involved.*  After I complained about the bullying from the Caucasion [sic] employee, I was let go, while the bullying employee was promoted.
>
> Thanks,
> Nicole Wooten[13]

Apparently in response to defendant's argument, discussed *infra*, that plaintiff did not exhaust administrative remedies with respect to her retaliation claims, plaintiff suggests that the

---

[11] It is not clear what conduct plaintiff refers to by her use of "this."

[12] In the copy of the email exchange provided to the Court, letters are missing from certain words.  *See* ECF 11-3.  The elision of these letters appears to be a feature of the copy rather than of the original emails.  Where appropriate, the Court has supplied the missing letters.  For ease of reading, the Court has not set off these letters with brackets.

[13] If Ratchford responded to the inquiry, that response has not been provided to the Court.

Court should construe the Timeline (ECF 11-2) and the Ratchford exchange (ECF 11-3) as part of the formal Charge submitted to the EEOC.  *See* ECF 11-1 at 9.

As noted, plaintiff did not mention the Timeline or the Ratchford exchange in the Complaint.  *See* ECF 1.  Nonetheless, if the Timeline and email exchange were considered to be part of the Charge, then they would be integral to the Complaint to the same extent as the Charge, and the Court could properly consider them "[i]n determining what claims [the] plaintiff properly alleged before the EEOC."  *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013).  However, in my view, there is no basis on which to consider the Timeline or the Ratchford email exchange as part of the Charge.

*Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147 (4th Cir. 1999), is instructive.  The plaintiff in *Sloop* filed a charge with the EEOC alleging that she was subject to age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634.  198 F.3d at 148.  The charge "failed to raise a retaliation claim [under Title VII] or, for that matter, to make any reference to Title VII."  *Id.* at 149.  Nonetheless, the plaintiff "assert[ed] that she properly brought her Title VII retaliation claim before the EEOC."  *Id.*  "In support of this argument," the plaintiff "relie[d] on the sole mention of a retaliation claim in her EEOC file—a letter, from [the plaintiff] to the EEOC, written more than two months after her initial charge had been filed," in which plaintiff stated, "I am now aware that I need to add a charge of retaliation to my complaint. . . . Please let me know what I need to do in order to do this."  *Id.*  Nonetheless, plaintiff "took no further action with regard to raising her retaliation claim before the EEOC."  *Id.* at 148.

The Fourth Circuit concluded that the letter did not serve to exhaust the plaintiff's administrative remedies with respect to the retaliation claim.  *Id.* at 149.  The Court explained that, "[e]ven if [the plaintiff] had subjectively believed [that] she had amended her charge by sending

the letter, it would be objectively illogical to view a private letter from a complaining party to the EEOC as constructively amending a formal charge, given that one of the purposes of requiring a party to file charges with the EEOC is to put the charged party on notice of the claims raised against it." *Id.* (citation omitted). The Court "conclude[d] that [the plaintiff's] letter did not operate to rectify the deficiency in her initial EEOC charge," and dismissed the plaintiff's retaliation claim for failure to exhaust administrative remedies. *Id.*

In *Balas*, 711 F.3d 401, the Court applied "*Sloop*'s reasoning" and reaffirmed that a court cannot consider letters submitted to the EEOC "[i]n determining what claims a plaintiff properly alleged before the EEOC." *Id.* at 408. In *Balas*, the plaintiff "allege[d] that," while employed at Northrop Grumman, she was denied promotions because "she repeatedly complained of gender discrimination and a hostile work environment." *Id.* at 405. The plaintiff was ultimately discharged, ostensibly for falsifying her time records. *Id.* Thereafter, she submitted an intake questionnaire to the EEOC, accompanied by "a letter laying out her complaints in greater detail, including being denied opportunities for promotions, a 'personal vendetta' [a human resources representative] held against her, and the circumstances of . . . [an] incident," *id.*, in which plaintiff was asked to change out of "ripped jeans . . . into more appropriate work attire." *Id.* at 404. The EEOC then "prepared a charge on her behalf, alleging sex discrimination and retaliatory termination, which [the plaintiff] signed . . . ." *Id.* at 405. "The only specific occurrences referenced in the charge were her termination and the jeans incident," and the "'continuing action' box on the charge was left blank . . . ." *Id.*

About seven months later, the plaintiff "sent a second letter to the EEOC providing further details related to . . . alleged sexual harassment" by the plaintiff's supervisor. *Id.* The EEOC then "prepared an amended charge, which included [an] allegation that [the supervisor] inappropriately

hugged her . . . ." *Id.*  "The hug was the only additional fact alleged in the amended charge," and "the 'continuing action' box was not checked." *Id.*  The plaintiff later filed suit, alleging, *inter alia*, "Title VII claims for failure to promote, retaliatory termination, and hostile work environment based on sexual harassment." *Id.*  "The [district] court determined that it lacked jurisdiction to consider allegations in [the plaintiff's] Title VII claim that were not included in her EEOC charge." *Id.*  And, "[i]n determining the scope of that charge, the court declined to consider [the plaintiff's] intake questionnaire or letters to the EEOC." *Id.*  On appeal, the plaintiff "argue[d] that the district court erred by considering only her EEOC charge—and not the intake questionnaire and letters she sent to the EEOC—in evaluating her Title VII claims." *Id.* at 406.

The Fourth Circuit began its discussion by reviewing the purpose and procedure of the EEOC's administrative process.  *Id.* at 406–07.  The Court stated, *id*. (citations and internal quotation marks omitted) (alteration in *Balas*):

> The requirement of filing a charge with the EEOC against the party sued serves two principal purposes: First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the [Civil Rights] Act's primary goal, the securing of voluntary compliance with the law.  The filing of an administrative charge, therefore, is not simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit. Rather, the charge itself serves a vital function in the process of remedying an unlawful employment practice.

The Court continued, *id.* at 407 (some citations omitted):

> An employee complaining of illegal discrimination must first contact the EEOC and present it with information supporting the allegations. 42 U.S.C. § 2000e–5(b); 29 C.F.R. § 1601.6.  After receiving an employee's intake questionnaire and any other information the employee has provided, the EEOC typically assists the employee with filing a charge.  This assistance often includes drafting a charge—as it did here—and then asking the employee to sign it. . . .
>
> The EEOC sends a notice and copy of the charge to the employer. 42 U.S.C. § 2000e–5(b); 29 C.F.R. § 1601.14.  This notice gives the employer the chance to voluntarily conduct its own investigation and attempt to resolve any discriminatory

actions internally. *See Chacko [v. Patuxent Inst.*], 429 F.3d [505,] 510 [(4th Cir. 2005)]. Concurrently, the EEOC investigates the charge.

The filing of a charge also "initiates agency-monitored settlement, the primary way that claims of discrimination are resolved." *Id.* This procedure "reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes." *Chris v. Tenet,* 221 F.3d 648, 653 (4th Cir. 2000). Prior to making any determination as to the merit of a charge, the EEOC may encourage and facilitate settlement between the parties. 29 C.F.R. § 1601.20.

The Court then considered the plaintiff's claim that the letters she sent to the EEOC should be considered part of her administrative charge. *See Balas*, 711 F.3d at 408. It stated that, "[i]n determining what claims a plaintiff properly alleged before the EEOC, *we may look only to the charge filed with that agency*." *Id.* (emphasis added). And, quoting *Sloop*, 198 F.3d at 149, the Court reiterated that "'it would be objectively illogical to view a private letter from a complaining party to the EEOC as constructively amending a formal charge, given that one of the purposes of requiring a party to file charges with the EEOC is to put the charged party on notice of the claims raised against it.'" *Balas*, 711 F.3d at 408.

According to the Court, it was foreclosed by *Sloop* from treating the plaintiff's letters as part of the charge. *Id.* It rejected the plaintiff's contention "that her letters, written *before* formal charges were filed, should be treated differently" from the letters in *Sloop*, which were submitted *after* the filing of a formal charge. *Id.* (emphasis added). The Court reasoned: "Given that [the plaintiff's] employer was never apprised of the contents of her letters (nor could she expect it to have been), the point at which they were written makes no difference for the goals of putting her employer on notice or encouraging conciliation." *Id.*

The Court "recognize[d] that EEOC charges often are not completed by lawyers and as such 'must be construed with utmost liberality.'" *Id.* (quoting *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988)) (additional citation and internal

quotation marks omitted).  Nonetheless, the Court emphasized that it was "not at liberty to read into administrative charges allegations they do not contain." *Balas*, 711 F.3d at 408.  "Instead, persons alleging discrimination have a different form of recourse if they determine that their initial charge does not read as they intended: they may . . . file an amended charge with the EEOC." *Id.* (citing 29 C.F.R. § 1601.12(b)).  But, "[t]he intake questionnaire and the letters [the plaintiff] submitted to the EEOC cannot be read as part of her formal discrimination charge without contravening the purposes of Title VII." *Balas*, 711 F.3d at 408.

In my view, *Sloop* and *Balas* make clear that I may not consider the Timeline (ECF 11-2) or the Ratchford exchange (ECF 11-3) in determining the scope of the claim that plaintiff presented to the EEOC.  *See Lambert v. Savaseniorcare Admin. Servs., LLC*, DLB-20-2768, 2022 WL 3027993, at *10 (D. Md. Jul. 29, 2022) ("Adhering to *Balas*, . . . courts in this circuit have . . . refused to look beyond a charge to the information that informed it.").  Therefore, "[i]n determining what claims . . . plaintiff properly alleged before the EEOC," *Balas*, 711 F.3d at 408, I am limited to considering the Charge itself.  ECF 8-2.

## B.

As noted, Count II of the Complaint alleges retaliation, in violation of Title VII; Count IV alleges retaliation, in violation of MFEPA; and Count V alleges a hostile work environment, in violation of Title VII.  Because defendant argues that Counts II and IV are both subject to dismissal on the ground that plaintiff did not allege retaliation in the Charge, I shall consider these counts together.  I then turn to consider the sufficiency of the allegations in Count V.

### 1.  Count II (Title VII retaliation); Count IV (MFEPA retaliation)

Counts II and IV of the Complaint allege that because plaintiff complained about her alleged discriminatory treatment, the University retaliated against her by, *inter alia*, "reprimanding

Plaintiff for attending the funeral of the relative, accusing her of . ... . disorganization and lower performance, cutting back her lectures," and declining to renew her employment contract.  ECF 1, ¶ 68; *see also id.* ¶¶ 60–73, ¶¶ 84–90.  As noted, according to the Complaint, plaintiff first "rais[ed] her concerns about disparate treatment" in the "fall of 2020," *id.* ¶ 61, and made further complaints to various University employees on July 25, 2021 (complaint to "Human Resources" about being asked to work on day off), *id.* ¶ 62; August 27, 2021 (complaint about bullying by Neumann in meeting with Hendrix and Neumann), *id.* ¶ 35; October 25, 2021 (complaint during meeting with Hendrix and Lilly "about discrimination, harassment, and abuse of power" by Neumann), *id.* ¶ 41; and in "the last week of November of 2021" (complaint to Hendrix and Lilly about discrimination and harassment by Neumann).  *Id.* ¶ 43.

Defendant urges dismissal of plaintiff's retaliation claims under Title VII and MFEPA (Counts II and IV) because plaintiff "did not allege retaliation in the charge that she submitted to the EEOC . . . ."  ECF 8-1 at 4.  Therefore, defendant maintains that plaintiff "failed to exhaust her administrative remedies with respect to such claims."  *Id.*

In her Opposition (ECF 11-1), plaintiff responds, first, that even if the Charge itself did not allege retaliation, her mention of retaliation in the Timeline and the Ratchford exchange served to exhaust administrative remedies with respect to her retaliation claims.  *Id.* at 9.  Plaintiff argues, second, that even if she did not assert retaliation with the EEOC, she may nonetheless pursue her retaliation claims because they are "'reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation'" of the allegations in that Charge.  *Id.* at 10 (quoting *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 594 (4th Cir. 2012))).[14]  Plaintiff suggests, in

---

[14] Plaintiff also invokes the "'continuing violation' doctrine," which "'operates to save certain unexhausted, otherwise time-barred claims.'"  ECF 11-1 at 12 (quoting *Carson v. Giant Food, Inc.*, 187 F. Supp. 2d 462, 473 (D. Md. 2002)).  This is puzzling, because defendant does

particular, that her claims of retaliation could "be expected to follow from a reasonable administrative investigation," *Sydnor*, 681 F.3d at 594, of her allegation in the Charge that, "[t]hroughout [her] employment, [she] reported to [the University] about this [discriminatory] treatment but received no assistance." ECF 11-1 at 11.

In its Reply (ECF 14), defendant maintains that the Court may not consider the Timeline in determining what claims plaintiff alleged before the EEOC. *Id.* at 2. Quoting *Cowgill*, 41 F.4th at 385, defendant asserts that "'it is objectively illogical to view a private letter from a complaining party to the EEOC as constructively amending a formal charge, given that one of the purposes of requiring a party to file charges with the EEOC is to put the charged party on notice of the claims raised against it.'" ECF 14 at 2 (additional citation and internal quotation marks omitted). And, according to defendant, "Wooten does not assert that the University received a copy of the timeline that she privately submitted to the EEOC . . . ." *Id.* Defendant also asserts that plaintiff's claims of retaliation are not reasonably related to her allegation of race discrimination in the Charge. *Id.* at 3. In particular, according to defendant, "Wooten's charge does not mention 'retaliation' and there is nothing in her charge to suggest that any alleged mistreatment she experienced was motivated by retaliatory animus." *Id.*

Before filing suit under Title VII, a plaintiff must exhaust administrative remedies. *See Patterson v. McLean Credit Union,* 491 U.S. 164 (1989), *superseded on other grounds by* 42 U.S.C. § 1981(b); *see also Cowgill*, 41 F.4th at 384; *McCray v. Md. Dep't of Trans.*, 662 F. App'x 221, 224 (4th Cir. 2016); *Bryant*, 288 F.3d at 132. The same is true under MFEPA. *Bush v. Frederick Cnty. Pub. Schs.*, 2024 WL 639255, at *3 (4th Cir. Feb. 15, 2024) (per curiam) ("Both

---

not argue that any of plaintiff's claims are untimely. *See* ECF 14 at 3 ("The University . . . has not argued that Ms. Wooten's claims are time-barred.").

Title VII and the [MFEPA] require a plaintiff alleging employment discrimination to exhaust administrative remedies before filing their lawsuit . . . .")

Ordinarily, to exhaust administrative remedies, a plaintiff must file a "charge" of discrimination with the EEOC or an appropriate state or local agency within 180 days of the date on which "the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1); s*ee Bush*, 2024 WL 639255, at *3; *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004). However, this period is extended to 300 days in a deferral state, such as Maryland. *See Bush*, 2024 WL 639225, at *3; *Garnes v. Maryland*, RDB-17-1430, 2018 WL 276425, at *4 n.8 (D. Md. Jan. 3, 2018); *Valderrama v. Honeywell Tech. Sols., Inc.*, 473 F. Supp. 2d 658, 662 n.4 (D. Md. 2007), *aff'd*, 267 F. App'x 256 (4th Cir. 2008).

Moreover, "a complainant is entitled to a 'right-to-sue' notice 180 days after the charge is filed." *Fort Bend Cnty. v. Davis*, 587 U.S.___, 139 S. Ct. 1843, 1847 (2019) (citing § 20003-5(f)(1); 29 C.F.R. § 1601.28). "And within 90 days following such notice, the complainant may commence a civil action against the allegedly offending employer." *Davis*, 139 S. Ct. at 1847 (citing § 2000e-5(f)(1)).

The exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko*, 429 F.3d at 510. Rather, it advances the "twin objectives" of "protecting agency authority in the administrative process and promoting efficiency in the resolution of claims." *Stewart v. Iancu*, 912 F.3d 693, 699 (4th Cir. 2019) (citation, internal quotation marks, and alterations omitted). It "'ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible.'" *Cowgill*, 41 F.4th at 384 (citation omitted). If an employee fails to exhaust her administrative

remedies, she is generally barred from filing suit or pursuing a particular claim. *See, e.g.*, *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005); *Bryant*, 288 F.3d at 132.

However, exhaustion is not jurisdictional. It is, instead, a "claim-processing rule[] that must be timely raised to come into play." *Fort Bend Cnty.*, 139 S. Ct. at 1846, 1850. A defendant may waive arguments related to administrative exhaustion. But, if objections are asserted in a timely fashion, such objections may warrant dismissal under Rule 12(b)(6). *See Kenion v. Skanska USA Bldg., Inc.*, RBD-18-3344, 2019 WL 4393296, at *4 (D. Md. Sept. 13, 2019) (discussing *Fort Bend Cnty.*).

Although administrative exhaustion is not jurisdictional, the exhaustion process has substantive effect. Generally, it limits the scope of a plaintiff's federal lawsuit to those parties and claims named in the administrative charge. *See* 42 U.S.C. § 2000e–5(f)(1); *Sydnor*, 681 F.3d at 593; *Causey v. Balog*, 162 F.3d 795, 800 (4th Cir. 1998); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). Therefore, "when the claims in [the] court complaint are broader than 'the allegation of a discrete act or acts in [the] administrative charge,' they are procedurally barred." *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 306 (4th Cir. 2019) (quoting *Chacko*, 429 F.3d at 508). To illustrate, the Fourth Circuit has stated that a "'claim will . . . typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits.'" *Nnadozie v. Genesis Healthcare Corp.*, 730 F. App'x 151, 161 (4th Cir. 2018) (quoting *Chacko*, 429 F.3d at 509) (ellipsis in *Nnadozie*).

Nevertheless, an EEOC charge "'does not strictly limit a . . . suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination.'" *Miles*, 429 F.3d at 491

(citation omitted); *see Chacko*, 429 F.3d at 512.   And, because "EEOC charges often are not completed by lawyers," the Fourth Circuit has instructed courts to construe them "with utmost liberality."   *Balas.*, 711 F.3d at 408 (citation omitted); *see Sydnor*, 681 F.3d at 594 ("[T]he exhaustion requirement should not become a tripwire for hapless plaintiffs.").   Thus, a federal court may hear a claim that was not presented to the EEOC so long as it is "'reasonably related'" to the plaintiff's EEOC charge "'and can be expected to follow from a reasonable administrative investigation . . . .'"   *Sydnor*, 681 F.3d at 594 (quoting *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000)); *see also Cowgill*, 41 F.4th at 384; *Stewart*, 912 F.3d at 705.

As an initial matter, I see no basis on which to conclude that plaintiff alleged retaliation in the Charge.   *See* ECF 8-2.   The form contains a box titled "Discrimination Based On:".   *Id.* Plaintiff entered one word: "Race."   *Id.*   Nor did plaintiff mention retaliation, or describe obviously retaliatory acts, in the narrative portion of the Charge, which requested "Particulars."   *Id.*   In the narrative, plaintiff stated, in part:   "*Upon hire*, I was subjected to stricter work conditions with less support by supervisor Cherilyn Hendrix and Assistant Program Director Theresa Neumann, compared to white employees."   *Id.* (emphasis added).[15]   It is hard to discern how conduct that began "[u]pon hire" could have been retaliatory.   *Id.*   Plaintiff concluded the narrative by stating: "I believe I was discriminated against due to my race (black) with regards to terms and conditions, harassment and discharge, in violation of Title VII of the Civil Right Act of 1964 . . . ."   *Id.*

In sum, the Charge, on its face, clearly alleges race discrimination.   But, it does not contain any allegation of retaliation.   *See Cowgill*, 41 F.4th at 385 (finding failure to exhaust in part because

---

[15] I included the full text of plaintiff's narrative in the "Factual Background" section of this Memorandum Opinion.

the plaintiff "did not check the retaliation box on her charge form, and the narrative explaining her charge made no mention of retaliation").

Nonetheless, as mentioned, the exhaustion requirement is not "a tripwire for hapless plaintiffs." *Sydnor*, 681 F.3d at 594. Therefore, I may consider a retaliation claim in the Complaint if it is "reasonably related" to the allegations in the Charge "and [could] be expected to follow from a reasonable administrative investigation" of those allegations. *Id.* (citations and internal quotation marks omitted) (alteration added).

The Fourth Circuit's cases applying the "reasonable relation" standard have not yielded a categorical rule for deciding when a reasonable relation exists. *See Cowgill*, 41 F.4th at 383–85; *Walton v. Harker*, 33 F.4th 165, 172–75 (4th Cir. 2022); *Sydnor*, 681 F.3d at 594–96; *Bryant*, 288 F.3d at 132–33; *Smith*, 202 F.3d at 247–48; *Sloop*, 198 F.3d at 149. In general, however, a court is justified in finding a reasonable relation if "'the charge refers to the same basic type of discrimination and the same basic fact pattern as in the subsequent federal complaint.'" *Shigley v. Tydings & Rosenberg LLP*, JKB-23-2717, 2024 WL 1156613, at *5 (D. Md. Mar. 18, 2024) (quoting *Sydnor*, 681 F.3d at 594).

The Fourth Circuit has cautioned against "interpret[ing] the exhaustion requirement so narrowly as to render it a nullity and undermine the purposes of fair notification, conciliation, and preservation of resources that Congress intended for it." *Chacko*, 429 F.3d at 512–13. Therefore, "a plaintiff fails to exhaust when, for instance, 'a charge alleges only racial discrimination but the complaint includes sex discrimination, or where a charge alleges only retaliation but the complaint alleges racial discrimination as well.'" *Shigley*, 2024 WL 1156613, at *5 (quoting *Sydnor*, 681 F.3d at 593–94); *see Chacko*, 429 F.3d at 509 ("A claim will . . . typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to

31

promote—and the claim [in the lawsuit] encompasses another type—such as discrimination in pay and benefits.").

In *Smith*, 202 F.3d at 248, the Fourth Circuit determined that the plaintiff had met the exhaustion requirement when her "EEOC charge alleged that [the defendant] retaliated against her by chastising her and threatening to terminate her employment for consulting with counsel," and her "Complaint alleged that [the defendant] retaliated against her by forcing her to work on [a harassing supervisor's] floor and by not offering her any other positions . . . ." The Court found that the charge and the lawsuit were reasonably related because "[b]oth [the plaintiff's] Complaint and her EEOC charge allege retaliatory actions by [the defendant's] management" in response to the plaintiff's "complaints about" her supervisor. *Id.*

*Sydnor*, 681 F.3d 591, is also instructive. There, the plaintiff alleged in her EEOC charge that her employer discriminated against her on the basis of disability by denying her a reasonable accommodation that she identified as "light duty work." *Id.* at 594. But, in her lawsuit, the plaintiff alleged that her employer discriminated against her on the basis of disability by refusing to grant her permission to "work[] full duty with the assistance of a wheelchair." *Id.* The Court determined that the plaintiff's allegations in the charge were sufficiently similar to her allegations in the lawsuit to satisfy the exhaustion requirement.

The Court observed that the allegations in the charge and the lawsuit "involved the same place of work and the same actor" and "focused on the same type of discrimination." *Id.* Of relevance, the Court said: "This was not a case in which the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex, but one in which the type of prohibited action alleged—discrimination on the basis of disability by failing to provide a reasonable accommodation—remained consistent

throughout." *Id.* "Indeed," in the Court's view, the case was "similar to *Smith*, in which the plaintiff's underlying claim—retaliation—did not change, even though the form of the alleged retaliation—threatened termination and refusal to offer any other positions—varied." *Id.* (citing *Smith*, 202 F.3d at 248). In other words, the *"*plaintiff did not change the type of discrimination alleged, just the type of accommodation, or relief, she requested." *Walton*, 33 F.4th at 174 (citing *Sydnor*, 681 F.3d at 596).

In contrast, in *Bryant*, 288 F.3d at 132–33, the Fourth Circuit determined that it could not consider the plaintiff's claim of retaliation when the only claim raised in the plaintiff's EEOC charge was race discrimination. And, in *Sloop*, 198 F.3d at 149, the Court dismissed the plaintiff's claim of retaliation under Title VII when the only allegation in her EEOC charge was age discrimination. *See also Walton*, 33 F.4th at 172–74 (concluding that plaintiff's claim of retaliation by failure to promote was not reasonably related to her claim of retaliation by demotion, because "[f]ailure-to promote is a distinct type of retaliation claim that . . . has to be explicitly raised and investigated"); *Cowgill*, 41 F.4th at 384–85 (affirming dismissal of retaliation claim when disability discrimination was the only allegation in the EEOC charge).

I can discern no reasonable relation between plaintiff's retaliations claims in Counts II and IV and her allegations in the Charge. To be sure, plaintiff suggests that a reasonable relation exists because the Charge alleged that plaintiff "'received no assistance'" after reporting her discriminatory treatment to the University. ECF 11-1 at 11 (quoting ECF 8-2). However, I am unpersuaded. The University's alleged failure to offer "assistance" is presented in the Charge as a component of the University's discrimination against plaintiff on the basis of race—not as an act of retaliation against plaintiff for having *reported* race discrimination. *Id.*; *see Cowgill*, 41 F.4th at 385 ("Though [the plaintiff's] charge described various events that occurred in the months

leading to her termination, the charge states that those events occurred because of disability discrimination—not retaliation.").  And, as stated, plaintiff's assertion in the narrative that the conduct complained of began "[u]pon hire" tends to foreclose any reasonable inference that the defendant's conduct was retaliatory in nature.  ECF 8-2.

It is also noteworthy that plaintiff's retaliation claims in Counts II and IV represent a "change [in] the type of discrimination alleged."  *Walton*, 33 F.4th at 174 (citation omitted).  Plaintiff's administrative charge expressly alleges only one type of discrimination, *i.e.*, race discrimination, whereas Counts II and IV advance claims of retaliation.  This change in the type of discrimination weighs against a finding that Counts II and IV are reasonably related to the allegations in the Charge.

In sum, plaintiff did not allege retaliation in the Charge.  Nor did plaintiff include in the Charge allegations reasonably related to her retaliation claims.  In my view, to conclude that plaintiff's retaliation claims are reasonably related to the allegations of race discrimination in the Charge would be inconsistent with "the purposes of fair notification, conciliation, and preservation of resources that Congress intended" the exhaustion requirement to serve.  *Chacko*, 429 F.3d at 513.  Although plaintiff's allegations of retaliation might, if true, be "cause for real concern," I "cannot throw overboard the enforcement scheme that Congress has set forth."  *Id.*  Therefore, I shall dismiss Count II and Count IV of the Complaint.

### 2.  Count V (Hostile work environment)

Count V of the Complaint alleges that Neumann and Hendrix subjected plaintiff to a hostile work environment, in violation of Title VII.  ECF 1, ¶¶ 91–100.

"Title VII renders it 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, sex, or national origin.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc) (quoting 42 U.S.C. § 2000e-2(a)(1)) (alteration in *Boyer-Liberto*). "An employer contravenes § 2000e-2(a)(1) by, inter alia, requiring an African-American employee to work in a racially hostile environment." *Boyer-Liberto*, 786 F.3d at 277 (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–67 (1986)).

To state a claim for hostile work environment under Title VII, a "'plaintiff must [allege] that the offending conduct (1) was unwelcome, (2) was because of her sex [, race, color, religion, or protected activity], (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, and (4) was imputable to her employer.'" *Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F.4th 707, 716 (4th Cir. 2024) (quoting *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011)); *see also Boyer-Liberto*, 786 F.3d at 277 (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011)); *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 407 (4th Cir. 2022). Although "'the first element is subjective, the rest of the test is made up of objective components based on a "reasonable person" standard.'" *Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 781 (4th Cir. 2023) (quoting *Pueschel v. Peters*, 577 F.3d 558, 565 (4th Cir. 2009)).

"A hostile work environment exists only when the workplace is so permeated with discriminatory intimidation, ridicule, and insult, that it would reasonably be perceived, and is perceived, as hostile or abusive." *Robinson*, 70 F.4th at 781. In determining whether an objectively hostile environment exists, a court should consider "'all the circumstances,'" which "'may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

employee's work performance.'"  *Boyer-Liberto*, 786 F.3d at 277 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

"'[P]laintiffs must clear a high bar in order to satisfy the [objective] severe or pervasive test.'"  *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208 (4th Cir. 2019) (quoting *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008)) (alterations in *Perkins*).  "'[I]ncidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard.'"  *Perkins*, 936 F.3d at 208 (quoting *Sunbelt*, 521 F.3d at 315) (alteration in *Perkins*).  In particular, "'rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference in opinion and personality conflict with [one's] supervisor, are not actionable under Title VII.'"  *Perkins*, 935 F.3d at 208 (quoting *Sunbelt*, 521 F.3d at 315–16) (alterations in *Sunbelt*).

Defendant argues that plaintiff has failed to allege "that the University engaged in conduct sufficiently severe or pervasive to alter the conditions of [her] employment as required to meet the high bar for a hostile work environment claim."  ECF 8-1 at 8 (internal quotation marks omitted) (alteration in ECF 8-1).  According to defendant, plaintiff's "allegations largely center around occasional criticisms of her work performance and her own dissatisfaction with her work assignments."  *Id.*  In defendant's view, "courts in this Circuit have consistently declined to find a hostile work environment based on facts far worse than anything [plaintiff] has alleged in the Complaint."  *Id.* at 9 (citing *Taylor v. Go-Getters, Inc.*, ELH-20-3624, 2021 WL 5840956, at *12–13 (D. Md. Dec. 9, 2021); *Smith v. McCarthy*, ELH-20-419, 2021 WL 4034193, at *25–26 (D. Md. Sept. 3, 2021); *Khoury v. Meserve*, 268 F. Supp. 2d 600, 613–14, 613 n.6 (D. Md. 2003), *aff'd* 85 F. App'x 910 (4th Cir. 2004)).  Defendant also asserts that the "Complaint is devoid of any

allegation that the University engaged in the acts of which [plaintiff] complains because of her race." ECF 8-1 at 9.

In her Opposition, plaintiff argues that her alleged mistreatment by Neumann and Hendrix "can be described as pervasive" because the alleged incidents of mistreatment occurred "over a two and the half-year period [sic]" and "are similar and connected in time." ECF 11-1 at 14. And, plaintiff asserts, without elaboration, that "the incidents were also severe because they manifest[ed] a discriminatory bias, can be characterized as abusive, and pos[ed] an unreasonable impediment to plaintiff's performance of her duties." *Id.*

In its Reply, defendant contends that, "[c]ontrary to [plaintiff's] conclusory assertions" in the Opposition, "the factual allegations in the Complaint make clear that the conduct complained of . . . occurred sporadically over a nearly three-year period and cannot be considered objectively pervasive." ECF 14 at 4. In particular, according to defendant, the Complaint indicates that there were long periods during which "no harassment is alleged to have occurred," *id.* at 4, such as "between fall of 2019 and spring of 2020," *id.* (citing ECF 1, ¶¶ 15–16); "between July 2 and October 2, 2020," ECF 14 at 4–5 (citing ECF 1, ¶¶ 20–21); and "between November 2021 and March 29, 2022." ECF 14 at 5 (citing ECF 1, ¶¶ 43–44). Defendant also reiterates that, in its view, "the conduct complained of by" plaintiff consists of nothing more than "'rude treatment by coworkers, callous behavior by one's supervisors, or a routine difference of opinion and personality with one's supervisor,' none of which is actionable under Title VII." ECF 14 at 5 (quoting *Perkins*, 936 F.3d at 208).

In my view, plaintiff's alleged mistreatment by Neumann and Hendrix was not "sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Cosby*, 93 F.4th at 716. To review, plaintiff alleges, *inter alia*, that she

"was not given adequate time to prepare for clinical medicine lectures," ECF 1, ¶ 16; "was assigned new duties," *id.*; "was forced to work during the weekend," *id.* ¶ 17; "was . . . given unrealistic deadlines," *id.* ¶ 20; "was constantly criticized," *id.* ¶ 22; "did not receive any meaningful guidance with regard to" the teaching of "the Foundations of Physician Assistant Practice course," *id.* ¶ 28; "was asked . . . to work on her day off," *id.* ¶ 29; was "reprimanded . . . for taking a day off to attend the funeral of a relative," *id.* ¶ 31; "was accused of being disorganized" and "was thereafter not allowed to quiz students," *id.* ¶ 32; and was "called . . . a slacker." *Id.* ¶ 33. In addition, plaintiff alleges that "students [who] made public racial comments including racial slurs about Plaintiff" were "largely unpunished." *Id.* ¶ 34.

Plaintiff's allegations are, at most, grievances about "the management style or decisions of those who supervised" her, which are "not actionable under Title VII." *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 601 (D. Md. 2011). In other words, they "involve precisely the 'ordinary tribulations of the workplace' that" the Supreme Court has made clear are not a proper basis for a hostile work environment claim. *Wang v. Met. Life. Ins. Co.*, 334 F. Supp. 2d 853, 864 (D. Md. 2004) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

To be sure, plaintiff's work environment, which was allegedly characterized by short deadlines, unsupportive supervisors, criticism, and a lack of training, may have been a source of inconvenience, frustration, and anxiety. But, a workplace characterized by unsupportive and critical supervisors, stressful work expectations, and a steep learning curve is not for these reasons alone a hostile workplace in violation of Title VII. As the Fourth Circuit has said, "[s]ome rolling with the punches is a fact of workplace life." *Sunbelt*, 521 F.3d at 315.

Indeed, courts in this Circuit have consistently dismissed hostile workplace claims based on allegations of misconduct similar to—and, occasionally, clearly more egregious than—the

misconduct plaintiff alleges in the Complaint. *See Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013) (per curiam) (stating that allegations of a supervisor mockingly yelling at the plaintiff in a meeting, "repeatedly harping on a mistake" by the plaintiff, and "unfairly scrutinizing and criticizing" plaintiff's failure to follow directives, fall "far short of being severe or pervasive enough to establish an abusive environment") (internal alterations omitted); *Pounds v. State of Md. Judiciary*, SAG-20-3379, 2021 WL 1751154, at *4 (D. Md. May 4, 2021) (dismissing Title VII claim where plaintiff alleged, among other things, that supervisor communicated with plaintiff on a daily basis "in a demeaning and belittling way," referred to plaintiff as "you people," and directed "subordinates to closely scrutinize and target Plaintiff") (internal quotation marks omitted); *Chand v. Braithwaite*, 3:20-1578, 2020 WL 9209284, at *2 (D.S.C. Sept. 1, 2020) (citing cases and dismissing a hostile work environment claim when plaintiff's supervisor allegedly intimidated plaintiff, provided plaintiff with negative performance evaluations, required plaintiff to check in routinely via email when working remotely, and denied plaintiff various workplace privileges); *Vincent v. MedStar S. Md. Hosp. Ctr.*, TDC-16-1438, 2017 WL 3668756, at *9–10 (D. Md. Aug. 22, 2017) (finding plaintiff failed to allege hostile work environment where supervisor yelled at employee, called her "stupid," refused to communicate with her, and restricted her access to the computer system); *Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 308 (D. Md. 2015) (explaining that general allegations that a supervisor disrespected plaintiff, frequently yelled at the plaintiff, refused to provide plaintiff with resources made available to male colleagues, and ignored plaintiff's calls and messages, were insufficient to sustain a hostile work environment claim); *cf. Taylor v. Becerra*, PJM-21-1469, 2023 WL 8113113, at *9 (D. Md. Nov. 22, 2023) (declining to find hostile work environment when plaintiff "was assigned work that he believes

was excessive, was excluded from meetings, and . . . some colleagues referred to him as 'the Grinch himself'").

In sum, I conclude that plaintiff has failed to allege the third element of a hostile workplace claim, *i.e.*, that the treatment complained of "was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Cosby*, 93 F.4th at 716 (citations and internal quotation marks omitted). Therefore, I shall dismiss Count V of the Complaint.

## IV.   Conclusion

For the foregoing reasons, I shall grant the Motion. ECF 8. Accordingly, I shall dismiss Counts II, IV, and V of the Complaint.

An Order follows, consistent with this Memorandum Opinion.

Date: May 1, 2024                                              _____/s/_____

Ellen Lipton Hollander
United States District Judge

40